

ⵀ ORIGINAL

Approved:    **BLM'G** John P. Cronan Randall W. Jackson
             BRENDAN R. MCGUIRE/JOHN P. CRONAN/RANDALL W. JACKSON
             Assistant United States Attorneys

Before:      HONORABLE KEVIN NATHANIEL FOX
             United States Magistrate Judge
             Southern District of New York

- - - - - - - - - - - - - - - x

**10 MAG    928**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **COMPLAINT** |
| -v.- | : | Violations of 18 U.S.C. §§ 2332a, 2332b, |
| FAISAL SHAHZAD, | : | 924(c)(1)(A), 844 |
| | : | COUNTY OF OFFENSE: |
| Defendant. | | NEW YORK |
| | : | |

- - - - - - - - - - - - - - - x

**DOC # _____**

SOUTHERN DISTRICT OF NEW YORK, ss.:

        ANDREW P. PACHTMAN, being duly sworn, deposes and says
that he is a Special Agent with the Federal Bureau of
Investigation ("FBI"), and charges as follows:

### Count One

        1.    From at least in or about December 2009, up to and
including on or about May 3, 2010, in the Southern District of
New York and elsewhere, FAISAL SHAHZAD, the defendant, having
traveled in interstate and foreign commerce in furtherance of the
offense, unlawfully, willfully, and knowingly, and without lawful
authority, did attempt to use a weapon of mass destruction,
namely, a destructive device as defined by Title 18, United
States Code, Section 921, against persons and property within the
United States, to wit, on or about May 1, 2010, SHAHZAD traveled
from Connecticut to New York and attempted to detonate improvised
explosive and incendiary devices inside a sports utility vehicle
located in the vicinity of 45th Street and Seventh Avenue in
Manhattan, New York.

        (Title 18, United States Code, Section 2332a, (a)(2)(C),
                      (c)(2)(A).)

## Count Two

2.    From at least in or about December 2009, up to and including on or about May 3, 2010, in the Southern District of New York and elsewhere, in an offense obstructing, delaying, and affecting interstate commerce and which would have so obstructed, delayed, and affected interstate and foreign commerce if the offense had been consummated, and involving conduct transcending national boundaries, FAISAL SHAHZAD, the defendant, unlawfully, willfully and knowingly, did attempt to kill and maim persons within the United States, and did create a substantial risk of serious bodily injury to others by attempting to destroy and damage structures, conveyances and other real and personal property within the United States, in violation of the laws of the United States, including Title 18, United States Code, Sections 844(d) and (i), 924(c)(1)(A) and (B)(ii), and 2332a(a)(2)(C) and (c)(2)(A), to wit, SHAHZAD, after receiving bomb-making training in Waziristan, Pakistan, traveled to the United States, transported a sports utility vehicle to the vicinity of 45th Street and Seventh Avenue in Manhattan, New York, and attempted to detonate explosive and incendiary devices located inside the sports utility vehicle.

(Title 18, United States Code, Section 2332b(a)(1)(B), (b)(1)(B).)

## Count Three

3.    From at least in or about December 2009, up to and including on or about May 3, 2010, in the Southern District of New York and elsewhere, FAISAL SHAHZAD, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit, the offense charged in Count Two of this Complaint, unlawfully, willfully, and knowingly did use and carry a destructive device, to wit, improvised explosive and incendiary devices placed in a sports utility vehicle in the vicinity of 45th Street and Seventh Avenue in Manhattan, New York.

(Title 18, United States Code, Section 924(c)(1)(A) and (B)(ii).)

## Count Four

4.    From at least in or about December 2009, up to and including on or about May 3, 2010, in an offense occurring in and affecting interstate and foreign commerce, FAISAL SHAHZAD, the defendant, unlawfully, willfully, and knowingly did transport and

receive, and attempt to transport and receive, an explosive with the knowledge and intent that it would be used to kill, injure, and intimidate an individual and to damage and destroy a building, vehicle, and other real and personal property, to wit, SHAHZAD transported a sports utility vehicle containing explosive and incendiary devices to the vicinity of 45th Street and Seventh Avenue in Manhattan, New York, with the intent to kill, injure and intimidate individuals and to damage and destroy nearby buildings, vehicles and other property.

(Title 18, United States Code, Section 844(d).)

## Count Five

5.    From at least in or about December 2009, up to and including on or about May 3, 2010, in an offense occurring in and affecting interstate and foreign commerce, FAISAL SHAHZAD, the defendant, unlawfully, willfully, knowingly, and maliciously did attempt to damage and destroy, by means of fire and an explosive, a building, vehicle, and other real and personal property, to wit, SHAHZAD attempted to damage buildings, vehicles, and other real and personal property by detonating explosive and incendiary devices located inside of a sports utility vehicle parked in the vicinity of 45th Street and Seventh Avenue in Manhattan, New York.

(Title 18, United States Code, Section 844(i).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

6.    I am a Special Agent with the FBI and a member of the FBI's New York-based Joint Terrorism Task Force ("JTTF"). The JTTF is responsible for investigating the attempted bombing of Times Square on or about May 1, 2010, by means of an abandoned sports utility vehicle filled with explosive and incendiary devices.  During the course of my investigation, I have, among other things, spoken with law enforcement officials and other individuals, and I have reviewed documents relating to this investigation.  Because this Complaint is being submitted for the limited purpose of establishing probable cause, I have not included details of every aspect of this investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported in this Complaint, they are reported in sum and substance, except where otherwise indicated.

## Overview Of The Investigation

7.    In the course of this investigation, I have
learned that, on Saturday evening, May 1, 2010, a Nissan
Pathfinder (the "Pathfinder") was discovered, abandoned, on the
street in Times Square.  Inside the Pathfinder were multiple,
filled propane tanks, gasoline canisters, and fertilizer — as
well as fireworks, clocks, wiring, and other items.  When
emergency services workers arrived on the scene, the Pathfinder
was visibly smoking.  The items in the back of the Pathfinder
were smoldering; it appeared that the occupant of the Pathfinder
had attempted to initiate an explosion.  Hours later, when law-
enforcement officers entered the Pathfinder, a number of keys
were recovered, including a key to an Isuzu automobile.  This
investigation has revealed that FAISAL SHAHZAD, the defendant,
bought the Pathfinder with cash on April 24, 2010; that he drove
an Isuzu; and that one of the keys in the Pathfinder opens the
door to SHAHZAD's Connecticut residence.  In addition, and among
other things, this investigation has revealed that SHAHZAD used a
pre-paid cellular telephone – which has not been used since April
28 – both to call a fireworks store and to receive a series of
calls from Pakistan following his purchase of the Pathfinder.

8.    On May 3, 2010, FAISAL SHAHZAD, the defendant, was
arrested at the John F. Kennedy International Airport (the
"Airport").  After the arrest, SHAHZAD admitted that he had
attempted to detonate a bomb in Times Square.  He also admitted
that he had recently received bomb-making training in Waziristan,
Pakistan.

## The Defendant

9.    According to records maintained by United States
Customs and Border Protection, FAISAL SHAHZAD, the defendant, a
naturalized U.S. citizen, returned to the United States on
February 3, 2010, via the Airport.  SHAHZAD arrived on a one-way
ticket from Pakistan.  During an immigration inspection, SHAHZAD
stated that he had been in Pakistan for the last five months
visiting his parents.  SHAHZAD also indicated that he intended to
stay at a motel in Connecticut while he looked for a place to
live and for a job.  SHAHZAD further advised that his wife had
remained behind in Pakistan.

## The Discovery Of The Bomb

10.    As part of this investigation, I have spoken to a
member of the New York City Police Department ("NYPD") who

-4-

responded to the vicinity of 45th Street and Seventh Avenue during the evening of May 1, 2010 ("Detective 1"). Based upon my conversation with Detective 1, as well as other law-enforcement agents with whom I have consulted, I have learned the following:

      a.    During the evening of May 1, 2010, a police officer on mounted patrol in the Times Square area ("Police Officer 1") was approached by an individual ("Witness 1") in the vicinity of 45th Street and Seventh Avenue. Witness 1 advised Police Officer 1 that there was an unoccupied car with its engine running nearby. Police Officer 1 then saw the Pathfinder parked near the southwest corner of 45th Street and Seventh Avenue, with nobody inside of it. Police Officer 1 also observed smoke emanating from the Pathfinder. Police Officer 1 radioed for assistance. Police Officer 1 and other NYPD officers on foot patrol then began to evacuate the area around the Pathfinder.

      b.    After Police Officer 1 radioed for assistance, components of the NYPD bomb squad, as well as the New York City Fire Department ("FDNY"), responded to the scene. The NYPD bomb squad and the FDNY then began working to identify the source of the smoke coming from inside the Pathfinder. After approximately eight hours of work, the NYPD bomb squad and the FDNY secured the Pathfinder such that it was safe to enter. According to various NYPD evidence reports as well as other law-enforcement reports and documents, law-enforcement personnel recovered the following items, among other others, from inside the Pathfinder:

          i.    Several white plastic bags containing fertilizer;

          ii.   Two red 5-gallon gasoline canisters each containing gasoline;

          iii. 152 M-88 fireworks;

          iv.   Three full propane gas canisters;

          v.    Two alarm clocks connected to wires;

          vi.   Three residential keys; and

          vii. A key to an Isuzu vehicle.

## The Investigation

11.   As part of this investigation, I have spoken to another FBI agent who is a member of the FBI's Connecticut-based JTTF ("Agent 1").  Based upon my conversation with Agent 1, as well as conversations with other law-enforcement agents, based in New York and in Connecticut, I have learned the following:

a.   The JTTF's examination of the engine of the Pathfinder revealed a Vehicle Identification Number ("VIN").  A VIN is a unique serial number used to identify individual motor vehicles.  Based on the VIN for the Pathfinder, the JTTF identified the name and the address of the last registered owner of the Pathfinder (the "Owner"); this identification was made using records maintained by the Connecticut Department of Motor Vehicles ("DMV").  The DMV records also indicated that the Pathfinder was registered under a different license plate from the one found on it in New York City on May 1, 2010.

b.   On or about May 2, 2010, based on information contained in the DMV records, members of the JTTF interviewed the Owner of the Pathfinder.  During this interview, the Owner indicated that the Owner had given the Pathfinder to another person, and that this person (the "Seller") had recently sold the Pathfinder.

12.   As part of this investigation, I have spoken to another FBI agent who is a member of the FBI's Connecticut-based JTTF ("Agent 2").  On or about May 2, 2010, Agent 2 and other JTTF agents interviewed the Seller about the recent sale of the Pathfinder.  Based upon my conversation with Agent 2, as well as with other law-enforcement agents, I have learned the following:

a.   Beginning in early April 2010, the Seller posted advertisements on several websites indicating that the Pathfinder was for sale.  These advertisements contained certain basic information about the Pathfinder, and also included the Seller's telephone number.

b.   In or about the middle of April 2010, the Seller received a telephone call from a man indicating that he had seen one of the advertisements for the Pathfinder and was interested in buying it (the "Buyer").  The Buyer did not leave a name but asked the Seller to call him back at a telephone number ("Telephone Number").  Thereafter, the Seller and the Buyer agreed to meet in a supermarket parking lot in Connecticut on the morning of April 24, 2010.

-6-

    c.   On the morning of April 24, 2010, in Bridgeport, Connecticut, the Seller met the Buyer in the supermarket parking lot.  The Buyer arrived at the parking lot in a black Isuzu Rodeo with tinted windows.

    d.   During this meeting, at which the Seller was accompanied by another person, the Seller advised the Buyer, among other things, that the Pathfinder had some mechanical problems.  The Buyer inspected the interior seating and cargo area of the Pathfinder, but not the engine, and asked if he could take the Pathfinder for a test drive.  The Seller told the Buyer that they could meet later that day for a test drive.

    e.   In the early afternoon of April 24, 2010, the Seller and the Buyer met again at the same Connecticut supermarket parking lot.  The Buyer arrived again in the black Isuzu Rodeo.  During this meeting, the Seller (along with a different person who accompanied the Seller) and the Buyer took the Pathfinder for a test drive.  The Buyer and the Seller agreed on a price of $1300 for the Pathfinder; the Buyer paid the Seller with 13 $100 bills.  The person accompanying the Seller then attempted to complete a bill of sale to memorialize the transaction.  The Buyer advised the Seller and the other person that this was unnecessary, explaining that he had his own license plate; the Buyer showed the Seller a license plate.  The Seller then gave the Buyer one key for the Pathfinder, and the Buyer drove out of the parking lot in the Pathfinder.  At the time the Buyer bought the Pathfinder, the vehicle did not have tinted windows — as it did after being discovered in Times Square.  The Buyer left the Isuzu Rodeo he had arrived in behind.

    f.   A few days after the sale of the Pathfinder, the Buyer called the Seller and asked about the timing of the last oil change for the Pathfinder.

    13.  As part of this investigation, I have spoken to another FBI agent who is a member of the FBI's Connecticut-based JTTF ("Agent 3").  On or about May 2, 2010, Agent 3 and other JTTF agents arranged for the Seller to provide a description of the Buyer to a Connecticut State Police sketch artist to generate a sketch of the Buyer.  After the sketch was completed, the sketch was shown to the individual who was present for the second meeting with the Buyer on April 24, 2010, and that individual remarked that the sketch looked just like the Buyer.

    14.  As part of this investigation, I have spoken to another FBI agent who is a member of the FBI's Connecticut-based JTTF ("Agent 4").  On or about May 3, 2010, Agent 4 and other

JTTF agents showed the Seller a photo array of six photos, and asked whether the Seller recognized any of the individuals in the photo array.  The Seller identified FAISAL SHAHZAD, the defendant, as the Buyer to whom the Seller sold the Pathfinder.

    15.  As part of this investigation, I have reviewed Connecticut DMV records for "Faisal Shahzad," which indicate that he is the registered owner of a 1998 Isuzu Rodeo S/LS jeep.  I have also spoken to Connecticut State Troopers who have access to a database that provides the color for vehicles registered in the state.  According to that database, the exterior color of the Isuzu Rodeo registered to "Faisal Shahzad" is black, the same color as the Isuzu Rodeo driven by the Buyer.

    16.  As part of this investigation, I have reviewed telephone records from Verizon Wireless for the telephone number ("Telephone Number") that FAISAL SHAHZAD, the defendant, used to contact the Seller.  These records reveal, among other things, the following:

    a.  The Telephone Number was assigned to a prepaid cellular telephone that was activated on or about April 16, 2010; this prepaid phone ceased to be active on or about April 28, 2010.

    b.  The Telephone Number called the Seller's telephone a total of 12 times between April 22, 2010, and April 27, 2010.  Five of those 12 calls were made on April 24, 2010, the day SHAHZAD bought the Pathfinder from the Seller.

    c.  According to records maintained by United States Customs and Border Protection, which I have reviewed, a certain number preceded by a zero ("Pakistani Number") is a Pakistani telephone number associated with SHAHZAD.  According to the Verizon Wireless records, the Telephone Number received four calls from the Pakistani Number (but without the preceding zero) on the morning of April 24, 2010.  Approximately one hour after receiving these four calls from the Pakistani Number, the Telephone Number called the Seller twice; later that day, as described above, SHAHZAD bought the Pathfinder from the Seller.

    d.  On April 25, 2010, at 9:43 a.m., the Telephone Number called a telephone number with a Pennsylvania area code.  Based on my investigation, I have learned that the Pennsylvania number is currently used by a fireworks store in rural Pennsylvania; that store sells M-88 fireworks.

17.    As part of this investigation, I have spoken to another FBI agent who is a member of the FBI's Connecticut-based JTTF ("Agent 5").  On or about May 3, 2010, Agent 5 and other JTTF agents interviewed the landlord of the building where FAISAL SHAHZAD, the defendant, lives ("SHAHZAD Residence").  Based upon my conversation with Agent 5, as well as with other law-enforcement agents, I have learned the following:

a.    According to the landlord, SHAHZAD has exclusive access to and control of a garage behind his residence.

b.    On May 3, 2010, the landlord saw SHAHZAD enter the garage and when SHAHZAD entered, the landlord saw two bags of fertilizer in SHAHZAD's garage.

18.    As part of this investigation, I have spoken to various law-enforcement agents who participated in a search of the SHAHZAD Residence, which was conducted on May 3, 2010.  Based upon these conversations, I have learned the following:

a.    Agents recovered from the garage associated with the SHAHZAD Residence, among other things, fireworks and fertilizer.

b.    As noted above, see supra ¶ 10(b), various keys were recovered from inside the Pathfinder; agents used one of the keys to open the door to the SHAHZAD Residence.

**The Arrest**

19.    On May 3, 2010, FAISAL SHAHZAD, the defendant, was arrested at the Airport as he attempted to leave the United States by means of a commercial flight to Dubai.  After his arrest, SHAHZAD stated that he had recently received bomb-making training in Waziristan, Pakistan.  In addition, SHAHZAD admitted that he had brought the Pathfinder to Times Square — and attempted there to detonate it.  SHAHZAD also noted that he had driven a particular car to the Airport on May 3, 2010, and stated that the car contained a gun.

20.    On May 4, 2010, law-enforcement agents at the Airport located the car that FAISAL SHAHZAD, the defendant, had described.  Agents recovered from inside of the car, among other things, a gun.

WHEREFORE, deponent respectfully requests that FAISAL SHAHZAD, the defendant, be imprisoned or bailed, as the case may be.

ANDREW F. PACHTMAN
Special Agent
Federal Bureau of Investigation

Sworn to before me this
4th day of May, 2010

HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK